

U.S. Department of Justice

*United States Attorney*
*Southern District of New York*

---

50 Main Street, Suite 1100
White Plains, New York 10606

July 11, 2024

The Honorable Edgardo Ramos
United States District Judge
Thurgood Marshall U.S. Courthouse
40 Foley Square
New York, NY 10007

  Re: *United States v. Nikolay Levinson*, 23 Cr. 570 (ER)
     *United States v. Nikolay Levinson*, 18 Cr. 893 (ER)

Dear Judge Ramos:

  The Government respectfully submits this letter in advance of the sentencing of defendant Nikolay Levinson in 23 Cr. 570, and his anticipated admission and sentencing for a violation of his conditions of supervised release in 18 Cr. 893, both currently scheduled for July 17, 2024.

  In 23 Cr. 470, Levinson pleaded guilty to six counts of mailing threatening communications, in violation of Title 18, United States Code, Section 876(c), pursuant to a plea agreement in which the parties stipulated to a United States Sentencing Guidelines ("Guidelines") range of 21 to 27 months' imprisonment.

  In 18 Cr. 893, the Government anticipates that Levinson will admit to Specification 14 of Probation Office's June 13, 2024 Amended Violation Report, which alleges Levinson's commission of the offenses to which he pleaded guilty in 23 Cr. 470. The Guidelines range for this violation of supervised release is 8 to 14 months' imprisonment.

  For the reasons set forth below, the Government submits that, in 23 Cr. 470, a sentence at the high end of the 21-to-27-month stipulated Guidelines range with the special conditions of release set forth in the parties' plea agreement, and, in 18 Cr. 893, a consecutive sentence within the 8-to-14-month Guidelines range, are necessary and appropriate.

  **A. Background and Offense Conduct**

  The defendant's conduct is a continuation of his unrelenting pattern of mailing threatening, racist, anti-Semitic, and harassing letters to innocent victims since at least March 2014, when the defendant was a corrections officer with the Maryland Department of Corrections ("MDOC"). (18 CR 893 PSR ¶¶ 25-28) ("18 PSR"). Initially, the defendant mailed letters to MDOC personnel containing pornographic images of men engaging in sex acts and allegations that MDOC personnel were engaging in sexual activity with inmates and/or each other, were members of the Ku Klux

Klan, and were under federal investigation and facing imminent criminal charges. (18 PSR ¶¶ 28, 31).

Also in 2014, the defendant mailed dozens of threatening, racist and anti-Semitic letters, to numerous law enforcement officers, bank and restaurant personnel, and houses of worship in Fort Lee, New Jersey. (23 Cr. 470 PSR ¶ 64) ("23 PSR").

In July 2015, the defendant mailed the four threatening letters underlying his convictions for Counts One through Four in 18 Cr. 893. (18 PSR ¶¶ 16-24). These victims were an agent of a modeling agency who had briefly employed the defendant as his driver (18 Cr. 893 Count One), a civilian New York City Police Department ("NYPD") Applicant Processing Division employee who had been involved in the repeated denials by the NYPD of the defendant's applications for employment as an NYPD officer (18 Cr. 893 Count Two), and two NYPD officers with whom the defendant was acquainted (18 Cr. 893 Counts Three and Four). (*Id.*).

In August 2015, Levinson was rearrested and detained pending trial in the 2014 New Jersey case for continuing to mail similar anonymous letters in New Jersey. For his New Jersey offenses, the defendant was convicted in 2017 of terroristic threats and stalking and sentenced to time-served (734 days) and five years' probation. (23 PSR ¶ 64).

Virtually immediately upon his August 2017 release from imprisonment, the defendant sent the threatening, racist, and anti-Semitic letters underlying Counts Five through Nine in 18 Cr. 893. (18 PSR ¶¶ 17, 29-38). These victims were an MDOC Lieutenant who had supervised the defendant when he was an MDOC corrections officer (18 Cr. 893 Count Five), a retired NYPD detective currently employed as an NYPD civilian employee and had published a book about the NYPD, but does not appear to have ever met or interacted with the defendant (18 Cr. 893 Count Six), the same agent of a modeling agency to whom the defendant had previously sent the threatening letter underlying 18 Cr. 893 Count One (18 Cr. 893 Count Seven), an MDOC corrections officer with whom the defendant had worked when he was a corrections officer (18 Cr. 893 Count Eight), and a childhood friend (18 Cr. 893 Count Nine). In September 2019, the Hon. Denise Cote sentenced Levinson to 27 months' imprisonment and three years' supervised release. (23 PSR ¶ 67).

Also immediately upon his August 2017 release from imprisonment, the defendant resumed sending letters to other victims in New Jersey. (23 PSR ¶ 65). These letters led to the defendant's October 2017 arrest and 2020 conviction in New Jersey for terroristic threats in the third degree and bias intimidation in the second degree, for which he was sentenced to 7 years' imprisonment, to run concurrently with his federal sentence. (*Id.*).

The defendant did not even cease his campaign of threatening letters following his October 2017 New Jersey arrest. (23 PSR ¶¶ 108-109). In December 2017 – while imprisoned – the defendant gave a co-conspirator a handwritten note and directed that co-conspirator's mailing of letters containing nazi symbols and the words "Chistian identity is here White Power" to 15 businesses in New Jersey and New York. (23 PSR ¶ 66). For this offense, the defendant was sentenced to 1 year imprisonment, to run consecutive with his federal sentence. (*Id.*).

The defendant was released from imprisonment in April 2022 and, again, resumed sending threatening letters almost immediately. 2023 Cr. 470 arises from the defendant's mailing from New Jersey of six threatening communications to five victims in or through the Southern District of New York while serving that his term of supervised release. These victims were:

Count One (Victim 1)

On June 30, 2022, the defendant mailed to a jewelry store in the Bronx, all the employees of which are Jewish, a cartoon bearing the text "NIGGERS, JEWS . . . BAD NEWS!" and a drawing of a black man pointing a handgun in the direction of a white man who is wearing a yarmulke and holding a piece of paper with the words "NOTICE – RENT HIKE – EFFECTIVE IMMEDIATELY" ("the Cartoon"), depicted below:



Count Two (Victim 2)

On July 2, 2022, the defendant mailed the same Cartoon to a law firm in Manhattan, most or the attorneys of which are Jewish.

Counts Three and Four (Victim 3)

On July 8, 2022, the defendant mailed a letter containing a swastika and an image of Adolf Hitler, in an envelope with "I am coming to kill you" written on its upper left corner, depicted below:



On October 2, 2022, the defendant mailed Victim-3 a second letter, depicted below:



Count Five (Victim 4)

On October 17 and 22, 2022, the defendant mailed to the principal of a public high school in the Williamsburg neighborhood of Brooklyn the Cartoon and the letter below.



Count Six (Victim 5)

On November 6, 2022, the defendant mailed the letter below to another Jewish man in Brooklyn.



These threatening mailings were, however, only a small subset of at least 41 similar anonymous, threatening, hateful, racist, anti-Semitic, and anti-Muslim letters the defendant sent to victims in the greater New York City area from June 20 through November 6, 2022, including:

- The following letter, which the defendant mailed to a Jewish museum in Manhattan:



- The following letter, stating that "The Nazi party has resurrected, HAIL HITLER! Niggers, faggots, and Muslims must be expelled," which the defendant mailed to individual victims and five synagogues in Manhattan and the Bronx:



- The following letter, which the defendant mailed to individual victims and a public school in Sheepshead Bay, Brooklyn, New York.



**B. The Plea and Guidelines Calculations**

    **i.**     <u>**23 Cr. 570 (ER)**</u>

On November 10, 2022, the defendant was arrested by Probation Officers in the District of New Jersey. He has remined in federal custody since that time. On November 1, 2023, a grand jury in the Southern District of New York returned the Indictment in this case charging six counts of mailing threatening communications, in violation of Title 18, United States Code, Section 876(c). On March 20, 2024, pursuant to a plea agreement, the defendant pleaded guilty to all six counts.

In the plea agreement, the parties stipulated to a Sentencing Guidelines offense level of 14 and a criminal history category of III, resulting in a Stipulated Guidelines Range of 21 to 27 months' imprisonment.

The Probation Office has correctly calculated an offense level of 13 and criminal history category of V. The difference in the offense level is a result of the parties' failure to account for his mailing of two of the six letters to a single victim, which results in five groups of counts rather than six, and a 4-level increase to the offense level, pursuant to U.S.S.G. § 3D1.4, rather than the 5-level increase to which the parties stipulated in the plea agreement. The difference in the criminal history score is a result of the parties' failure to account for two of the defendant's New Jersey convictions and, as a result of those convictions bringing his criminal history points above seven, an additional point assessed for the defendant's commission of the offense while on supervised release, pursuant to U.S.S.G. § 4A1.1(e).

The Government believes that the Probation Office's calculation of the defendant's offense level and criminal history score are correct. Under the Probation Office's calculations, the Guidelines range would be 30 to 37 months' imprisonment. However, given the important contractual principles which govern plea agreements, *see, e.g.*, *Santobello v. New York*, 404 U.S. 257 (1971), the Government stands by its plea agreement, which calculated the Guidelines range as 21 to 27 months' imprisonment.

### ii. The Parties' Agreement to Jointly Request Special Conditions of Release

In their plea agreement, the parties agreed to jointly request that the Court:

> impose a five-year term of supervised release following imprisonment with special conditions including, but not limited to, evaluation and compliance with mental health treatment as directed by the U.S. Probation Office, including (1) initially, inpatient psychiatric treatment as directed by the U.S. Probation Office, during which time the defendant's need for medication shall be evaluated and his applications for funding through the NJ Division of Developmental Disabilities ("DDD"), Social Security Disability, and Supplemental Security Income shall be initiated, to be followed by; (2) residence in a supervised living environment as directed by the U.S. Probation Office, such as a DDD group home or other form of supervised group home, through which the defendant's medications will be mandated and supervised; (3) compliance with the medication regimen, which may include injectable medication, prescribed by a licensed psychiatrist approved by the U.S. Probation Office; and (4) psychotherapeutic treatment from a licensed psychologist or a licensed clinical social worker as directed by the U.S. Probation Office. The defendant shall contribute to the cost of such services rendered and any medications prescribed, via co-payment or full payment, in an amount to be determined by the U.S. Probation Office, based upon the defendant's ability to pay and/or the availability of third-party payment.

Plea Agreement at 3.

### iii. 18 Cr. 893 (ER)

The Government anticipates that the defendant will admit to Specification #14, which alleges that he committed the crime of mailing a threatening communication, in violation of 18 U.S.C. § 876(c), as the defendant pleaded guilty in 23 Cr. 570(ER). This is a Grade B violation. Based upon the defendant's criminal history of III in 18 Cr. 893, the Guidelines range for this supervised release violation is 8 to 14 months' imprisonment, pursuant to U.S.S.G. § 7B1.4.

### C. Discussion

In his sentencing submission, the defendant, through counsel, requests that the Court impose a below-Guidelines sentence of time served (approximately 20 months imprisonment). For the reasons set forth below, the Government submits that, in 23 Cr. 470, a sentence at the high end of the 21-to-27-month stipulated Guidelines range with the special conditions of release set forth in the parties' plea agreement, and, in 18 Cr. 893, a consecutive sentence within the 8-to-14-month Guidelines range, are necessary and appropriate.

1. **Applicable Law**

As the Court is well aware, the Sentencing Guidelines still provide strong guidance to sentencing courts following *United States v. Booker*, 543 U.S. 220 (2005), and *United States v. Crosby*, 397 F.3d 103 (2d Cir. 2005). Because the Guidelines are "the product of careful study based on extensive empirical evidence derived from the review of thousands of individual sentencing decisions," *Gall v. United States*, 128 S. Ct. 586, 594 (2007), district courts must treat the Guidelines as the "starting point and the initial benchmark" in sentencing proceedings. *Id.* at 596. After that calculation, however, the Court must consider the seven factors outlined in Title 18, United States Code, Section 3553(a), which include the nature and circumstances of the offense, the individual characteristics of the defendant, and the need to adequately deter criminal conduct and promote respect for the law. *Id.* at 50 & n.6.

Guidelines Section 7B1.3(f) provides: "Any term of imprisonment imposed upon the revocation of . . . supervised release shall be ordered to be served consecutively to any sentence of imprisonment that the defendant is serving, whether or not the sentence of imprisonment being served resulted from the conduct that is the basis of the revocation of . . . supervised release." The commentary provides that "it is the commission's recommendation that any sentence of imprisonment for a criminal offense that is imposed after revocation of . . . supervised release be run consecutively to any term of imprisonment imposed upon revocation." U.S.S. G. § 7B1.3, cmt. n. 4.

2. **The Requested Sentences are Necessary and Appropriate in this Case**

In 23 Cr. 570, the Government respectfully submits that a sentence within the Stipulated Guidelines range of 21 to 27 months' imprisonment, along with the special conditions of release the parties agreed to jointly request as part of the plea agreement, is sufficient, but not greater than necessary, to comply with the purposes of sentencing. Weighing the applicable factors under 18 U.S.C. § 3553(a)(2), it is clear that the seriousness of the offenses, the history and characteristics of the defendant, and the need to promote respect for the law, provide just punishment, afford adequate deterrence and protect the public, are all significant considerations in crafting a just sentence given the conduct at issue in this case.

A sentence within the Guidelines range would acknowledge the most pernicious effects of the defendant's conduct, its impact on individual victims, and the need to protect the public. Just as the defendant intended, his threats caused significant fear and distress in his victims and the communities in which they live. The defendant intended to do more than simply instill fear in his victims. In most of his mailings, the defendant included racist language and Nazi symbols in a deliberate effort to increase racial and religious tension and the harm that he caused.

Understanding the defendant's motivations is more complicated than may be readily apparent. A majority of the defendant's mailings contain anti-Semitic language and were sent to Jewish victims or organizations. However, the defendant has a Jewish father, lived in Israel with his family as a child, speaks Hebrew, and purportedly fled Russia with his family to escape anti-Semitism. It is abundantly clear, however, that the defendant suffers from significant mental health issues[1] and is overwhelmingly likely to recidivate soon after his release from imprisonment unless

---

[1] *See* September 22, 2023 Report of Jonathan H. Mack, Psy.D., Def.'s Sent. Mem., Ex. D.

those issues are treated, including through the use of injectable anti-psychotic medication if prescribed by his treating physicians. The special conditions of release to which the parties agreed in the plea agreement are aimed at facilitating this treatment in order to prevent the additional crimes the defendant is virtually certain to commit immediately upon release absent appropriate treatment, and the harm that those future crimes will inflict on numerous additional innocent members of the community.

While they undoubtedly contributed to the offense, the defendant's history and characteristics, including mental health issues, do not merit a time-served sentence. The defendant has repeatedly committed the same crime, over and over again. Imprisonment does not deter him, but it does largely protect the public by making it more difficult for the defendant to continue to commit a serious offense that instills real fear into innocent victims and the community. The sentences the Government requests are necessary to reflect the seriousness of the offenses and adequately protect the community from further crimes of this defendant.

In addition, notwithstanding his mental health issues, the defendant's actions, including his choice of victims and relentless efforts, even after serving significant terms of imprisonment for the same conduct, undeniably reflect a calculated malevolence. He sent his threats anonymously precisely because he had awareness of the wrongfulness of his actions. He took steps to avoid being caught. His actions were not impulsive. They involved a degree of planning, including researching the addresses of his victims. He devoted time and energy to executing his plan. He intended to cause harm, and repeatedly did so. The sentences the Government requests are necessary in order to adequately deter this defendant and others from similar conduct.

Finally, the defendant's commission of the instant offenses shortly after beginning a term of supervised release following a conviction for the identical offense, warrants a consecutive, within-Guidelines term of imprisonment for his flagrant violation of his conditions of supervised release.

### D. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence at the high end of the 21-to-27-month stipulated Guidelines range in 23 Cr. 470, a consecutive sentence within the 8-to-14-month Guidelines range in 18 Cr. 893, and the special conditions of release set forth above, are necessary and appropriate in this case.

Respectfully submitted,

DAMIAN WILLIAMS
United States Attorney

by: __/s/ Jeffrey C. Coffman_____
Jeffrey C. Coffman
Assistant United States Attorney
(914) 993-1940

cc: David M. Stern, Esq.
(via ECF)